IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **NORMAN E. MINOR,** | * |
| *Plaintiff* | * |
| v. | * Case No.: 8:12-cv-01061-RWT |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY** | * |
| *Defendant* | * |

## MEMORANDUM OPINION

Plaintiff Norman Minor, a *pro se* litigant, brought this lawsuit against his former employer, Defendant Washington Metropolitan Area Transit Authority ("WMATA"), alleging wrongful termination. Although Plaintiff fails to state in his complaint on what grounds his termination was unlawful, Plaintiff appears to be alleging wrongful termination in violation of the Americans with Disabilities Act ("ADA") and the Collective Bargaining Agreement ("CBA") between Defendant and his union. Defendant filed a motion for summary judgment, arguing that Plaintiff's ADA claim is barred on immunity grounds and his CBA claim is time-barred under the applicable statute of limitations. For the reasons discussed below, the Defendant's motion shall be granted.

## FACTS

Plaintiff, who suffers from partial incontinence, was employed by Defendant for almost four years. *See* ECF No. 2 at 1-2. On May 20, 2010, Plaintiff had an incident of incontinence on his way into work, but still managed to arrive at work in a timely fashion. *Id.* at 3. Upon his arrival at work, Plaintiff changed into a pair of clean blue jeans. *Id.* Later that afternoon,

Plaintiff's supervisor instructed Plaintiff to change back into his uniform pants, which were soiled from the morning incident. *Id.* Later that same day, Plaintiff's superintendent instructed Plaintiff to take medical leave and informed him that he could not return to work until he completed a medical screening. *See id.* at 4; ECF No. 16 at 2. Ms. Quillen, an employee in WMATA's human resources department, instructed Plaintiff to attend a medical screening scheduled for the following day, May 21, 2010. ECF No. 2 at 4.

Plaintiff did not appear at the May 21, 2010 medical screening. ECF No. 16-1, Ex. A. According to Plaintiff, no subsequent appointments were scheduled. ECF No. 2, Addendum to Compl. at 1. However, Defendant asserts that a medical screening was scheduled for May 28, 2010 and that it sent a letter via certified/return receipt mail instructing Plaintiff to attend. *Id.* Plaintiff contends that he did not receive such a letter and that no medical screening was ever scheduled for May 28, 2010. ECF No. 2 at 5.

On June 14, 2010, Plaintiff was terminated, apparently due to his failure to attend a medical screening. ECF No. 2 at 4-5. On June 30, 2010, Plaintiff filed a grievance with his union. *Id.* at 6. The union was unable to reach a resolution and submitted the matter to the union membership to decide whether the matter should go to arbitration.[1] *Id.* On July 28, 2010 Plaintiff received a letter from the union, informing him that his membership with the union had been terminated. *Id.* On October 31, 2011, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against his employer and the union. ECF No. 16, Ex. E. On March 16, 2012, the EEOC mailed Plaintiff a right to sue letter.[2] *Id.*

---

[1] Although the complaint does not reveal the members' decision, it appears that they voted against arbitration. *See* ECF No. 2 at 6; ECF No. 15 at 3.

[2] While Plaintiff asserts that he filed an EEOC complaint on April 6, 2011 and received a right to sue letter on November 30, 2011, the EEOC forms attached to Defendant's summary judgment motion indicate that the EEOC complaint actually was submitted on October 31, 2011 and the EEOC right to sue letter was sent on March 16, 2012. *Compare* ECF No. 2 at 7, *with* ECF No. 16, Ex. E.

On February 28, 2012, Plaintiff initiated this wrongful termination action in the Prince George's County Circuit Court for the District of Maryland against Defendant WMATA. ECF No. 2. The action was removed to this Court on April 5, 2012. ECF No. 1. On December 3, 2012, Defendant filed a motion for summary judgment. ECF No. 16. On February 7, 2013, Plaintiff filed an opposition, arguing that Defendant lied about the relevant events. ECF No. 19. On February 14, 2013, Defendant filed a reply. ECF No. 20.

## **STANDARD OF REVIEW**

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248-49. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

The Court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation . . . to prevent 'factually unsupported

3

claims or defenses' from proceeding to trial." *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 323-24). When ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (emphasis added). However, "if the evidence is merely colorable or not significantly probative, it may not be adequate to oppose entry of summary judgment." *Thompson Everett, Inc., v. Nat'l Cable Adv.*, 57 F.3d 1312, 1323 (4th Cir. 1995).

## DISCUSSION

### I. Wrongful Termination in Violation of the ADA

Defendant asserts that Plaintiff cannot prevail on his possible ADA claim because Defendant is immune to claims arising under the ADA. ECF No. 16 at 4. The Eleventh Amendment bars suits against state entities for violations of the ADA. *See Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001). Courts "have consistently recognized that in signing the WMATA Compact, Virginia and Maryland each conferred its immunity upon WMATA, which therefore enjoys, to the same extent as each state, immunity from suit in federal court based on its performance of governmental functions." *Jones v. Wash. Metro. Area Transit Auth.*, 205 F.3d 428, 432 (D.C. Cir. 2000). Thus, WMATA is immune to ADA claims. *See Hopps v. Wash. Metro. Area Transit Auth.*, 480 F. Supp. 2d 243, 256 (D.D.C. 2007) (holding that WMATA had immunity against an ADA claim); *accord Culberth v. Wash. Metro. Area Transit Auth.*, No. 09-2121, at *1-2 (D.D.C. Dec. 1, 2009). Because Defendant is immune to an ADA suit, summary judgment shall be granted in favor of Defendant on this claim.

### II. Wrongful Termination in Breach of the CBA

Defendant argues that Plaintiff's possible CBA claim fails for a number of reasons, but primarily because it violates the applicable statute of limitations. When a plaintiff asserts both

that his employer breached a CBA and that his union breached its duty of fair representation, as Plaintiff alleges in his complaint, the claim is considered a "hybrid § 301 claim." *DelCostello v. Int'l Bros. of Teamsters*, 462 U.S. 151, 164 (1983). This type of claim has a six month statute of limitations. *Id.* at 169, 172 (adopting the six month statute of limitations from §10(b) of the National Labor Relations Act for hybrid § 301 claims); *accord Lee v. Consolidation Coal Comp*, No. 98-2345, 1999 U.S. App. Lexis 7999, at *3 (4th Cir. Apr. 27 1999). In bringing a hybrid § 301 claim, a plaintiff may sue its employer, the union, or both. *DelCostello*, 462 U.S. at 165.[3]

The statute of limitations begins to run when "the plaintiff knows or should know that a violation of his rights has occurred." *Bey v. United Parcel Serv., Inc.*, 5:05cv208, 2006 WL 5939398, at *5 (W.D.N.C. Feb. 9, 2006) aff'd, 196 F. App'x 166 (4th Cir. 2006). "In hybrid suits … the claim arises when the plaintiff could first successfully maintain a suit based on that cause of action … or when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Lee*, 1999 U.S. App. Lexis 7999, at *4; *see Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 68-69 (2d Cir. 1995) (stating that the statute of limitations begins to run when the employee knows that the union has failed to act; the union does not have to state that it refuses to act); *Adams v. Budd Co.*, 846 F.2d 428, 431 (7th Cir. 1988) (stating that the statute of limitations begins at the time of the union's final decision or when the employee knew or should have known that the union would take no further action); *McCreedy v. Local Union No. 971, UAW*, 809 F.2d 1232, 1237 (6th Cir. 1987) (holding that the statute of limitations begins to run when the union decides not to arbitrate).

---

[3] Defendant also argues that Plaintiff's failure to join the union as a defendant bars his CBA claim. ECF No. 16 at 5-7. However, *DelCostello* clearly states that an employee may sue just the employer or just the union. *DelCostello*, 462 U.S. at 164. Moreover, the case cited by Defendant, *Jordan v. Washington Metro. Area Transit Auth.*, 548 A.2d 792 (D.C. Cir. 1988), does not purport to overturn *DelCostello*; instead, it suggests that when an employee sues only the employer (or the union), and fails to establish that either employer or union breached their duties, the employee is precluded from later bringing a claim against the defendant it did not originally sue. *See Jordan*, 548 A.2d at 798.

The statute of limitations does not toll because a plaintiff files a complaint with an administrative body. *See Kolomick v. United Steelworkers of America District 8*, 762 F.2d 354, 355-57 (4th Cir. 1985) (holding that a complaint to the National Labor Relations Board did not toll the statute because the administrative proceeding was a parallel, not requisite, avenue of relief); *but see Trent v. Bolger*, 837 F.2d 657, 659 (4th Cir. 1988) (stating that when the CBA requires the employee to seek an administrative remedy, the administrative complaint is not a parallel proceeding and will toll the statute).

Here, Plaintiff sued only his employer, but asserted in his complaint that his employer breached the CBA and that his union breached its duty of fair representation. Thus, Plaintiff's CBA claim is a hybrid § 301 claim. ECF Nos. 2 at 5-6; 19 at 2-3. Plaintiff was terminated on June 14, 2010. ECF No. 2 at 4. On June 30, 2010, Plaintiff initiated grievance procedures with his union, presumably believing that his termination violated the CBA. *See id.* at 6. Plaintiff asserts that the grievance proceedings ended on September 7, 2010, and that he received a letter on or around September 28, 2010, informing him that his membership with the union was terminated. *Id.* at 6-7. On February 28, 2012, Plaintiff filed the present action.

Because Plaintiff knew or should have known of the acts underlying his suit during the time period between June 14, 2010 (his termination date) and September 28, 2010[4] (date of union letter informing plaintiff that he was no longer a union member), the statute of limitations began to run, at the latest, on September 28, 2010. Moreover, because neither party asserts that filing an EEOC complaint is required under the CBA, Plaintiff's EEOC complaint was a parallel proceeding that did not toll the statute of limitations. Therefore, the statute of limitations for

---

[4] Although Plaintiff acknowledges that the grievance proceedings ended on September 7, 2010 because it is unclear whether Plaintiff learned of the termination of the proceedings on September 7, 2010 or on September 28, 2010, the later date will be applied.

Plaintiff's claim ended on or around March 28, 2011, almost a year before Plaintiff initiated this suit on February 28, 2012.

Plaintiff argues that the limitations period should be extended for a number of reasons. First, he asserts that he needed extra time for his union to appeal his employment decision. But given that Plaintiff concedes that the union's grievance procedure ended on September 7, 2010, this argument is baseless. *See* ECF No. 2 at 7. Second, Plaintiff argues that his untimeliness should be excused because he was hospitalized for a period of time. ECF No. 19 at 2. Plaintiff provides no dates regarding his alleged hospitalization, however, and Defendant notes that Plaintiff's hospital stay occurred around December of 2012, *after* Plaintiff filed the present action. ECF No. 16 at 1. Third, Plaintiff alleges that his status as a *pro se* litigant should allow for an extension. However, Plaintiff's *pro se* status does not exempt him from complying with procedural requirements. *C.f. United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) ("even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling"). Finally, Plaintiff alleges that Defendant lied in its motion for summary judgment and gave false information to this Court. ECF No. 19 at 1. Plaintiff claims that the letter provided by Defendant dated May 24, 2010 and instructing Plaintiff to attend the second scheduled medical screening (ECF No. 16 Ex. A) was never sent to Plaintiff, and that no second medical screening was ever scheduled. ECF No. 19 at 3. This supposedly fake letter is not relevant to the key issues in the case, however, and has no bearing on this Court's ultimate resolution of the summary judgment motion. No material facts are in dispute, and Plaintiff's bald allegations on a collateral matter cannot create such a genuine issue of material fact. Accordingly, summary judgment should be granted for Defendants.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment [ECF No. 16] shall be granted. A separate Order follows.


Date: <u>July 15, 2013</u>　　　　　　　　　　　　　　　　　<u>　　　　　　　/s/　　　　　　</u>
　　　　　　　　　　　　　　　　　　　　　　　　ROGER W. TITUS
　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE